ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
                                   :
UNITED STATES OF AMERICA           :
                                   :
        -v.-                       :
                                   :   **SEALED INDICTMENT**
                                   :
ULRIK DEBO,                        :
    a/k/a "Molgaard Debo,"         :   S2 19 Cr. 8 7 4
    a/k/a "Ulrik Molgaard,"        :
                                   :
            Defendant.             :
                                   :
- - - - - - - - - - - - - - - - - X


## COUNT ONE
### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Persons and Entities

1.   At all times relevant to this Indictment, ULRIK DEBO,
a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, a
Danish citizen, resided in Europe and, at certain times relevant
to this Indictment, was employed by a Cayman Islands-based
financial services firm.

2.   At all times relevant to this Indictment, a co-
conspirator not named as a defendant herein ("CC-1"), was a
United States citizen and resided in the United States.

3.   At all times relevant to this Indictment, a co-
conspirator not named as a defendant herein ("CC-2") was a

citizen of the United Kingdom and of Switzerland, was a founder and co-principal of Firm-1.

4.    At all times relevant to this Indictment, Firm-1 was a Swiss corporation based in Geneva, Switzerland that purported to offer asset management and trustee services to its clients. Firm-1 is owned and controlled by CC-2 and one other co-founder and co-principal.   Throughout its corporate existence, as set forth herein, Firm-1, through CC-2 and others, executed stock manipulation schemes relating to the publicly traded shares of multiple companies and facilitated the laundering of proceeds from those schemes.   Among other things, Firm-1 set up various nominee entities to help its clients conceal their ownership of public company shares, and evade SEC reporting requirements, and opened bank accounts and brokerage accounts on behalf of those nominee entities.   Firm-1 executed trades in accounts held by various nominee entities in furtherance of various stock manipulation schemes and received fees and commissions in exchange for its services in advancing those schemes.

5.    At all times relevant to this Indictment, Company-1 was a publicly traded company based in Manhattan, New York that purported to develop treatments for insomnia.   Shares of Company-1 traded on the OTC market in the United States.

2

6.    At all times relevant to this Indictment, Company-2 was a privately held company based in California that purported to develop water-based cannabidiol ("CBD") products.

7.    At all times relevant to this Indictment, Company-3 was a publicly traded company based in London that purported to engage in gold exploration.  Shares of Company-3 traded on the OTC market.

8.    At all times relevant to this Indictment, Company-4 was a publicly traded company that was incorporated in Nevada and based in California.  Company-4 previously purported to rent hybrid electric and low emission vehicles.  As of in or about October 2019, Company-4 purported to be engaged in plans to sell bottled CBD-infused water and energy drinks.  Shares of Company-4 traded on the OTC market.

## The Scheme to Defraud

9.    From at least in or about 2013, up to and including at least in or about July 2019, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others known and unknown, conspired to defraud the investing public by orchestrating and facilitating multiple stock manipulation schemes, commonly referred to as "pump and dump" schemes.

10.   In executing these pump and dump schemes, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and his co-conspirators generally utilized the following steps:

3

(1) they secretly amassed beneficial ownership of all, or substantially all, of the stock of certain publicly traded companies; (2) they then manipulated the price and demand for the stocks of those companies, including through the release of materially false information to the investing public, causing the stock prices to become artificially inflated; and (3) they sold out of their secretly-amassed positions at these inflated values at the expense of the investing public.

11.  The vast majority of the securities that ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others known and unknown, conspired to manipulate were "penny" or "microcap" stocks that traded in the United States on the OTC market.  These securities were issued by small companies, were thinly traded, and typically traded at less than $1 per share.  Thus, these securities were particularly susceptible to manipulation.

## Overview of the Defendant's and Others Role in the Scheme to Defraud

12.  ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, furthered the stock manipulation scheme by, among other things, identifying a suitable publicly traded shell company that could be used in the scheme; identifying, in certain instances, a suitable privately held company to engage in a "reverse merger" with the shell company;

4

obtaining financing to purchase all or substantially all of the outstanding shares of the shell company issuer; causing Nominee Entities to obtain ownership of the issuer's shares; identifying and paying "promoters" that issued exaggerated and, at times, false press releases about the issuer in order to raise the trading price and volume of the issuer's shares; and identifying and paying various "trading specialists" who assisted in artificially manipulating the trading volume and price of the issuer's shares.

13.  ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, was aided in the stock manipulation scheme by CC-1, CC-2, and others. CC-2 primarily furthered the stock manipulation scheme by, among other things, using Firm-1 to obscure scheme participants' beneficial ownership and control of all or substantially all of the shares of companies ("issuers") whose securities they sought to manipulate.  CC-2 caused Firm-1 to establish nominee entities that were registered in the names of various third parties (the "Nominee Entities") to hold the shares that were, in truth and in fact, beneficially owned and controlled by the scheme participants. CC-2 also caused Firm-1 to open bank accounts in the names of these Nominee Entities and to trade shares owned by the Nominee Entities through various brokerage accounts.  Through Firm-1, CC-2 exercised trading authority over the Nominee Entities'

5

shares and CC-2 directed brokers to execute trades on behalf of
these Nominee Entities in furtherance of the stock manipulation
scheme.  Certain of these trades were executed in Manhattan, New
York.  CC-2, through Firm-1, received fees and a share of the
illicit profits generated by the scheme's manipulative trading.

### Use of Nominee Entities to Secretly Amass Shares

14.  In furtherance of the conspiracy and scheme to
defraud, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik
Molgaard," the defendant, and others known and unknown, secretly
amassed beneficial ownership and control of all or substantially
all of the stock of the issuers whose stock they planned to
manipulate.  In order to obscure their ownership interests, DEBO
and others caused these shares to be held in the names of
multiple Nominee Entities.  Additionally, DEBO and others caused
the Nominee Entities' holdings to be structured in such a way so
as to ensure that no single Nominee Entity held more than five
percent of the outstanding stock of any of the issuers.

### The Reverse Merger Transactions

15.  As a further part of the conspiracy and the scheme to
defraud, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik
Molgaard," the defendant, and others, on multiple occasions,
caused publicly traded shell companies with few, if any, assets
to reverse merge with privately held companies that typically
were in industries likely to attract the investing public's

6

interest, such as CBD products, blockchain, and gold mining.  In connection with the reverse mergers, DEBO, and others caused various filings to be made with the United States Securities and Exchange Commission (the "SEC") that contained material misrepresentations and omissions.  For example, when disclosing which shareholders held more than five percent of the relevant company's stock, these filings concealed that the co-conspirators beneficially owned more than five percent of the stock, which they controlled through nominee brokerage accounts.

**Manipulation of the Issuers' Stock Prices and Trading Volume**

16.  After ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others participating in the scheme had obtained control of all or substantially all of the shares of an issuer and, in certain instances, after the completion of a reverse merger, the scheme participants manipulated the trading price and volume for the stock of the issuer.  DEBO and others typically manipulated the price and volume by, among other things, causing promotional materials to be distributed to the investing public that contained exaggerated and, at times, false claims about the issuer.  DEBO and others concealed from the investing public the fact that these promotional materials were financed and created at the direction of those who beneficially owned and controlled substantially all of the shares of the relevant issuers.

7

17.  ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others also engaged in manipulative trading activity in order to artificially increase the trading volume and share price of the issuers whose stock they sought to manipulate.  Certain of these trades were executed in Manhattan, New York, as well as elsewhere in the United States.  For example:

a.  DEBO and others caused Nominee Entities subject to their control to engage in "match" trades in which they caused multiple Nominee Entities they controlled to essentially trade with one another to create the appearance of trading volume and demand for the stock at issue.  For instance, DEBO and other scheme participants frequently caused one Nominee Entity they controlled to place a buy order for a certain quantity of shares at a particular, often above-market, price, and another Nominee Entity they controlled to place a matching sell order for a similar quantity of shares at a similar price. The match trades had the effect of increasing trading price and volume of the manipulated stock and of making it appear to the investing public that such increases were driven by actual market interest in the stock rather than coordinated and contrived trades between Nominee Entities controlled by the defendant and his co-conspirators.

b.    In addition, DEBO and others took steps to ensure that a given stock they were manipulating closed "in the green," meaning that the stock's closing price at the end of the trading day exceeded the opening price at the beginning of the trading day.  The scheme participants manipulated the stock's share price in this fashion in order to make it appear that the stock's share price was consistently increasing over time due to actual market demand so that the stock would be more attractive to the investing public.  In order to accomplish the goal of having the stock close "in the green," the scheme participants engaged in manipulative trading at or near the close of the trading day.

## Manipulation of the Shares of Particular Issuers

18.    As part of the scheme, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others sought to manipulate the shares of, among others, the issuers set forth below.

## Company-1

19.    From at least in or about 2013, up to and including at least in or about 2017, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others known and unknown, schemed to manipulate the trading price and volume of the stock of Company-1.  In furtherance of the scheme, DEBO, working with CC-1, among others, caused funds to be transferred, including

9

through wire transfers that were executed, in part, through
Manhattan, New York, in order to obtain beneficial ownership and
control of all or substantially all of the outstanding shares of
Company-1.

20.  ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik
Molgaard," the defendant, and others known and unknown,
thereafter caused the shares of Company-1 that they controlled
to be held in the names of multiple Nominee Entities, including
Nominee Entities that CC-2 controlled through Firm-1.  The
shares were spread among the various Nominee Entities in order
to obscure the fact that, in reality, CC-2, DEBO, and the other
scheme participants controlled the shares' disposition.

21.  In or about March 2016, in furtherance of the scheme
to manipulate the trading price and volume of Company-1, CC-1,
CC-2, and Firm-1, among others, caused Nominee Entities subject
to their control to engage in match trades with another entity
controlled by an associate of CC-1 ("Associate-1") that was, in
truth and in fact, purchasing Company-1's shares at the
direction of CC-1 and CC-2.  In particular:

a.  CC-2 and Firm-1 caused Nominee Entities that they
controlled to place sell orders of Company-1's shares in certain
specified quantities at a particular price and CC-1, with CC-2's
knowledge, instructed Associate-1 to have an entity Associate-1

controlled place a matching buy order for a similar quantity of shares at a similar price.

b. CC-2, Firm-1, and CC-1, in truth and in fact, were secretly financing the purchases of shares by Associate-1 such that, after the match trades were completed in the open market, CC-2 and Firm-1 caused funds to be transferred to an entity Associate-1 controlled to pay for approximately 70 percent of the gross sales of the Company-1 shares. Accordingly, CC-2, Firm-1, and CC-1 were not only controlling the timing, quantity and price of the selling and buying of the Company-1 shares, but also were paying kickbacks to Associate-1 to repay him for participating in the match trades at their direction.

c. Additionally, CC-1, with the knowledge of CC-2, instructed Associate-1 to not sell the shares of Company-1 that Associate-1 had acquired through the aforementioned match trades into the market. Associate-1 ultimately agreed to not sell the shares until CC-1 instructed him otherwise. This allowed CC-2 and CC-1 to keep the shares of Company-1 under CC-2 and CC-1's control.

## Company-4

22. Beginning in or about September 2018 and continuing through at least in or about December 2019, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and

11

others known and unknown, schemed to manipulate the trading price and volume of the stock of Company-3 and Company-4. In furtherance of the scheme, DEBO, initially identified Company-3 as a publicly traded shell company that the group could obtain control of and cause to engage in a reverse merger with Company-2, a privately held company. DEBO later indicated that the group would instead utilize Company-4 as the publicly traded shell company into which Company-2 could be merged.

23. In order to obtain control of all of the free trading shares of Company-4, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, with the knowledge and agreement of CC-2, instructed CC-1 to wire funds to a bank account designated by DEBO as partial payment for control of Company-4 in preparation for the manipulation of Company-4's stock's after it merged with Company-2. In order to facilitate the reverse merger, DEBO caused attorneys to prepare various necessary agreements, documents, and filings with respect to Company-4, including documents filed with the OTC Markets Group, Inc. ("OTC Markets"), a company in the United States that administers the OTC market.

24. For example, in or about October 2019, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, caused various documents relating to listing of shares of Company-4 to be filed with OTC Markets and made accessible to

12

the investing public on OTC Markets' website. These publicly available documents included Company-4's financial statements, as well as multiple "Disclosure Statements Pursuant to the Pink Basic Disclosure Guidelines," a form OTC Markets disclosure filing, including for the period ending June 30, 2019. CC-2 was apprised of the fact that DEBO had caused the aforementioned filings to be made.

25. In connection with the scheme, CC-2 and Firm-1 made available multiple Nominee Entities to hold and trade shares of Company-4. Additionally, in order to manipulate the trading price and volume of the relevant stock, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and CC-2 identified and agreed to provide payment to a stock promoter who, in connection with the stock manipulation scheme, was engaged to issue exaggerated and misleading press releases following the planned reverse merger. CC-2 and DEBO also made plans to work with CC-1 as a "trading specialist" in order to engage in manipulative trading activity to artificially increase the trading volume and share price of the relevant shares, including through match trades between Nominee Entities.

## Laundering the Profits from the Scheme, Including Through Firm-1

26. After the scheme participants artificially inflated the share prices of the relevant issuers' stock, they profited

13

from the scheme by selling the shares they beneficially owned and controlled into the market at these artificial prices. By selling these shares while the trading price was artificially inflated through their manipulative trading activity, the scheme participants reaped millions in illicit profits.

27. After these crime proceeds were generated, CC-2 and Firm-1 assisted the other scheme participants, including ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, in obtaining their cut of these proceeds by remitting these illicit funds to them in a manner designed to conceal the source of these funds or the identity of the recipients thereof, including through transfers that were executed, in part, through accounts located in Manhattan, New York. With CC-2's knowledge and, at times, at CC-2's direction, these transfers were executed in a manner intended to conceal the true source of these funds and the recipients of the funds by, for instance (1) using fabricated invoices to justify wire transfers from accounts held in the names of the Nominee Entities, controlled and operated by Firm-1, to other bank accounts controlled by the scheme participants and (2) transferring the proceeds immediately to third-party sellers of assets, including high-end luxury goods and luxury automobiles, on behalf of the scheme participants for the purchase of these items, but without the

14

transfers passing through any accounts associated with the
participants.

## Statutory Allegations

28. From at least in or about 2013, up to and including in
or about December 2019, in the Southern District of New York,
and elsewhere, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik
Molgaard," the defendant, and others known and unknown,
willfully and knowingly combined, conspired, confederated, and
agreed together and with each other to commit offenses against
the United States, to wit, securities fraud, in violation of
Title 15, United States Code, Sections 78j(b) and 78ff, and
Title 17, Code of Federal Regulations, Section 240.10b-5.

29. It was a part and an object of the conspiracy that
ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the
defendant, and others known and unknown, willfully and
knowingly, directly and indirectly, by use of the means and
instrumentalities of interstate commerce, the mails, and the
facilities of national securities exchanges, would and did use
and employ, in connection the purchase and sale of securities,
manipulative and deceptive devices and contrivances in violation
of Title 17, Code of Federal Regulations, Section 240.10b-5, by
(a) employing devices, schemes, and artifices to defraud; (b)
making and causing to be made untrue statements of material fact
and omitting to state material facts necessary in order to make

15

the statements made, in light of the circumstances under which

they were made, not misleading; and (c) engaging in acts,

practices, and courses of business which operated and would

operate as a fraud and deceit upon persons, in violation of

Title 15, United States Code, Sections 78j(b) and 78ff; and

Title 17, Code of Federal Regulations, Section 240.10b-5.

30.  It was further a part and an object of the conspiracy

that ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard,"

the defendant, and others known and unknown, willfully and

knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations, and

promises, would and did transmit and cause to be transmitted by

means of wire and radio communication in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds for the

purpose of executing such scheme and artifice, in violation of

Title 18, United States Code, Section 1343.

### Overt Acts

31.  In furtherance of the conspiracy and to effect the

illegal objects thereof, the following overt acts, among others,

were committed in the Southern District of New York and

elsewhere:

a.  In or about November 2015, CC-2 and Firm-1 caused

a wire transfer to be sent from a third party account to a

16

Nominee Entity controlled by CC-2 and Firm-1 in connection with the scheme to artificially manipulate the trading price and volume of Company-1's stock, which wire was executed, in part, through Manhattan, New York.

b. In or about March 2016, CC-2 and Firm-1, and others known and unknown caused a broker to execute trade orders using a Nominee Entity to artificially manipulate the trading price and volume of Company-1's stock, and certain of these trade orders were executed in Manhattan, New York.

c. On or about April 16, 2019, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, instructed CC-1 to wire funds to a bank account designated by DEBO ("Bank Account-1") in preparation for the manipulation of Company-2's stock after its merger into Company-3 or Company-4.

d. On or about April 26, 2019, CC-1 caused $50,000 to be wired to Bank Account-1, which wire was executed, in part, through Manhattan, New York.

e. On or about May 14, 2019, DEBO instructed CC-1 to wire additional funds to a different bank account designated by DEBO ("Bank Account-2") in order to prepare for the manipulation of Company-2's stock after its merger into Company-3 or Company-4.

17

f. On or about May 15, 2019, CC-1 caused $50,000 to be wired to Bank Account-2, which wire was executed, in part, through Manhattan, New York.

g. On or about June 11, 2019, CC-2 spoke by telephone with CC-1, who at the time was located in Manhattan, New York, and informed CC-2 of his presence there. CC-2 and CC-1 discussed their plan to manipulate the trading price and trading volume of the stock of Company-3, and subsequently, Company-4 after the planner reverse merger with Company-2.

h. On or about June 12, 2019, DEBO again spoke by telephone with CC-1, who at the time was located in Manhattan, New York, and informed DEBO of his presence there. DEBO and CC-1 discussed their plan to manipulate the trading price and trading volume of Company-2's stock after its merger into Company-3 or Company-4.

i. On or about June 14, 2019, DEBO sent CC-1 an email attaching a draft Disclosure Statement Pursuant to the Pink Basic Disclosure Guidelines to OTC Markets for Company-4 in connection with their plan to manipulate the trading price and trading volume of Company-4's stock.

j. On or about June 17, 2019, DEBO spoke by telephone with CC-1 and confirmed that they would utilize Company-4 as a publicly traded shell company for the stock manipulation scheme.

18

k.     In or about October 2019, in connection with the
plan to manipulate the trading price and trading volume of
Company-4's stock, DEBO caused various filings to be made with
OTC Markets with respect to Company-4 that were reviewed and
acted upon by employees of OTC Markets based in Manhattan, New
York and elsewhere.

(Title 18, United States Code, Section 371.)

### COUNT TWO
### (Conspiracy to Commit Wire Fraud])

The Grand Jury further charges:

32.     The allegations contained in paragraphs 1 through 27,
and 31 above are hereby repeated, re-alleged, and incorporated
by reference as if fully set forth herein.

33.     From at least in or about 2013, up to and including in
or about December 2019, in the Southern District of New York,
and elsewhere, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik
Molgaard," the defendant, and others known and unknown,
willfully and knowingly combined, conspired, confederated, and
agreed together and with each other to commit wire fraud, in
violation of Title 18, United States Code, Section 1343.

34.     It was a part and an object of the conspiracy that
ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the
defendant, and others known and unknown, willfully and
knowingly, having devised and intending to devise a scheme and

19

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT THREE
### (Securities Fraud – Company-1)

The Grand Jury further charges:

35. The allegations contained in paragraphs 1 through 27, and 31 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

36. From at least in or about 2013, up to and including at least in or about 2017, in the Southern District of New York and elsewhere, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and the mails and facilities of national securities exchanges, did use and employ, and cause to be used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17,

20

Code of Federal Regulations, Section 240.10b-5, by (a) employing

devices, schemes, and artifices to defraud; (b) making untrue

statements of material fact and omitting to state material facts

necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; and

(c) engaging in acts, practices and courses of business which

operated and would operate as a fraud and deceit upon persons,

and aided and abetted the same, to wit, DEBO, and others schemed

to manipulate the trading price and trading volume of Company-

1's stock.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Securities Fraud - Company-3 and Company-4)

The Grand Jury further charges:

37.   The allegations contained in paragraphs 1 through 27,

and 31 above are hereby repeated, re-alleged, and incorporated

by reference as if fully set forth herein.

38.   From at least in or about September 2018 up to and

including at least in or about December 2019, in the Southern

District of New York and elsewhere, ULRIK DEBO, a/k/a "Molgaard

Debo," a/k/a "Ulrik Molgaard," the defendant, willfully and

knowingly, directly and indirectly, by the use of means and

instrumentalities of interstate commerce, and the mails and

21

facilities of national securities exchanges, attempted to use and employ, did use and employ, and cause to be used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, and aided and abetted the same, to wit, DEBO, and others schemed to manipulate the trading price and trading volume of the stock of Company-3 and, ultimately, Company-4.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT FIVE
### (Wire Fraud)

The Grand Jury further charges:

39.   The allegations contained in paragraphs 1 through 27, and 31 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

22

40.  From at least in or about 2013, up to and including at least in or about July 2019, in the Southern District of New York and elsewhere, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, DEBO engaged in a scheme to manipulate the trading price and trading volume for the common stock of various publicly traded companies, which scheme involved the use of wires.

(Title 18, United States Code, Section 1343 and 2.)

## FORFEITURE ALLEGATIONS

41. As a result of committing one or more of the offenses alleged in Counts One through Five of this Indictment, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to, a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

42. As a result of committing one or more of the offenses alleged in Counts Seven and Eight of this Indictment, ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum in United States currency representing the amount of property involved in said offenses.

## Substitute Assets Provision

43. If any of the above-described forfeitable property, as a result of any act or omission of ULRIK DEBO, a/k/a "Molgaard Debo," a/k/a "Ulrik Molgaard," the defendant:

24

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

25

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

ULRIK DEBO,
a/k/a "Molgaard Debo,"
a/k/a "Ulrik Molgaard,"

Defendant

### SEALED INDICTMENT

S2 19 Cr. ___

(15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R.
§§ 240.10b-5;
18 U.S.C. §§ 371, 1343, 1349 & 2.)

GEOFFREY S. BERMAN
United States Attorney.

A TRUE BILL

FOREPERSON